## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BRETHREN HOME OF GIRARD, ILLINOIS, an Illinois Not for Profit Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  06-3161 |
| OSM, INC., a Missouri Corporation; STRATUM DESIGN-BUILD, INC., a Missouri Corporation; and STEWART W. MACGREGOR, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on cross-motions for summary judgment.  Plaintiff Brethren Home of Girard, Illinois (Home), contracted with Defendants OSM, Inc. (OSM) and Stratum Design-Build, Inc. (Stratum) for OSM and Stratum to design and build an addition to the Home's facilities in Girard, Illinois (Project).  OSM contracted to provide architectural services, and Stratum contracted to be the general contractor on the Project.  Defendant Stewart W. MacGregor was the sole stockholder,

officer, and director of both OSM and Stratum.  Stratum did not complete the Project, and the Home brought this diversity action alleging nine counts. Complaint (d/e 1) and Amendment to Complaint (d/e 18) (collectively referred to as the Complaint).  Counts II and III of the Complaint have been dismissed.  Opinion entered November 16, 2006 (d/e 14).  The remaining seven counts assert claims for breach of contract, fraud, deceptive business practices, and restitution.  Count I alleges breach of contract against Stratum; Counts IV-VII allege fraud and deceptive practices claims against OSM and MacGregor; Count VIII alleges a claim for restitution against OSM; and Count IX alleges a claim of breach of contract against OSM.

Both sides seek summary judgment on some or all of the claims.  The Defendants also seek to strike the Affidavit of Paulette Buch-Miller (Miller Affidavit) submitted by the Home to prove the damages' claim against Stratum in Count I.  MacGregor and OSM ask for oral argument.  The parties have briefed the issues sufficiently, so the request for oral argument is denied.  For the reasons set forth below: (1) the Home's request for summary judgment on Count I against Stratum is allowed, in part, because Stratum breached its contract by failing to complete the Project, and the

Miller Affidavit is sufficient to establish the amount of damages resulting from the breach, with the exception of the damages claimed for the cost of paving and the additional interest and closing costs incurred when the Home borrowed additional funds to complete the Project; (2) Defendants MacGregor and OSM's motion for summary judgment on the fraud and deceptive business practices' claims in Counts IV-VII are allowed because the Home failed to present evidence that the alleged conduct was either false or deceptive; (3) OSM's motion for summary judgment on Count VIII is allowed because the contract between OSM and the Home (OSM Agreement) was not void, and thus, the Home may seek damages for the alleged breach in Count IX, but is not entitled to restitution; and (4) the cross-motions for summary judgment on Count IX are denied because the OSM Agreement is ambiguous and issues of fact exist regarding whether OSM breached the Agreement.

## STATEMENT OF FACTS

On March 18, 2003, OSM sent the OSM Agreement to Paulette Buch-Miller (Miller), as Executive Director of the Home.  The OSM Agreement was in the form of a letter which set forth OSM's proposal for providing architectural and engineering services for the design of the Project.

Complaint, Exhibit A, OSM Agreement.  The Project was estimated to cost approximately $1,800,000.00 to complete.  At the time, MacGregor was licensed to practice architecture in Illinois.  OSM, however, was not registered as a professional design firm, as required by Illinois law.  225 ILCS 305/21.

The OSM Agreement first set forth the scope of the Project:

SCOPE

The project will consist of approximately 17,500 square feet, (8,750 square feet per floor), two-story 16 unit apartment building with 12 two-bedroom units, 4 one-bedroom units, living area, storage area, elevator, enclosed walkway between new and existing building and 600 square foot covered walkway to the new parking garage.  A 6,900 square foot covered, enclosed parking garage will include 28 private stalls, a bus stall with automatic garage doors and an internal walkway leading to a covered walkway.

Both buildings and walkway will be wood frame and trussed structures, with concrete foundations and slab on grade construction.  Exterior finishes will match existing apartment building.  Layouts are to be modified as needed and to improve on original design work.  Site work will consist of grading and asphalt paving to match existing.  The site will be designed to drain away from buildings using contours and catch basins as required.

No provisions have been made in this proposal for design of the lake, catch basin or drain line, as indicated on the Master Plan.

OSM Agreement, at 3.

The OSM Agreement then stated:

> OSM, Inc. proposes to provide Architectural/Engineering services as described in the above scope of work on a stipulated fee basis.  Our proposed fee for the above scope of work is per the following breakdown:

| | |
|---|---|
| Architectural Fees | $34,000 |
| Structural Fees | $8,000 |
| Mechanical, Engineering, Plumbing (MEP) | $20,000 |
| Civil Engineering | $6,000 |
| Total Fees | $68,000 |

> . . . .

> These fees will cover all aspects of the above scope through construction closeout and provide you with a complete, professional package within the time frame you require and at the quality you expect.  Fees are exclusive of normal reimbursable expenses.

Id., at 4.

Miller and the Home's Board of Directors reviewed OSM's proposal.  Miller had been involved in construction projects before.  OSM, Inc. and Stewart W. MacGregor's Motion for Summary Judgment on Counts IV through VII of Plaintiff's Complaint (d/e 27), Exhibit A, Deposition of Paulette Miller (Miller Deposition), at 17-23.  She understood that MacGregor owned both OSM and Stratum.  She understood that MacGregor proposed that his companies perform both the architectural

work and the general contractor work on the Project.  Id., at 33, 38, 59,
131.  Miller and the Home's Board of Directors decided to hire MacGregor.
The Home agreed to OSM's terms and executed the OSM Agreement on
May 22, 2003.  OSM Agreement, at 5.  The Home alleges that it ultimately
paid OSM a total fee of $69,166.00 for its services.  Amended Complaint,
¶ 206.

On October 31, 2003, the Home entered into an Agreement with
Stratum to construct the Project as the general contractor (Stratum
Agreement).  Complaint, Exhibit B, Stratum Agreement.  The original bid
was $1,784,510.00.  By July 2004, the Home approved changes in the
Project that increased the agreed price to $1,805,479.00.  Complaint,
Exhibit E, July 28, 2004, Application for Payment (July 28 Application).

OSM wrote a Project Manual for the Project.  Plaintiff's Motion for
Partial Summary Judgment on Count IX Against Defendant OSM, Inc. (d/e
28) (Home's Count IX Motion), Exhibit A, Deposition of Stewart
MacGregor (MacGregor Deposition), Deposition Exhibit 2, Project Manual
for Pleasant Hill Village Expansion, dated October 21, 2003 (Project
Manual).  The Project Manual stated that the general contractor, Stratum,
would, "Submit 3 executed copies of each application [for payment] to the

Architect within 24 hours; one copy shall be complete, including waivers of lien and similar attachments."  Project Manual, § 01027 - Applications for Payment.

Construction began in the fall of 2003 and continued through the first half of 2004.  Throughout this time, Stratum submitted partial payment requests.  The requests detailed the work performed to date, and the amounts owed to various subcontractors.  MacGregor signed the Applications for Payment on behalf of OSM.  The first Application for Payment contained the following certification:

ARCHITECT'S CERTIFICATE FOR PAYMENT

> In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

MacGregor Deposition, Deposition Exhibit 6, January 29, 2004, Application for Payment.  The subsequent Applications for Payment did not contain this written certification.  Rather, the Applications listed the amount certified for payment, and MacGregor signed as architect.  See e.g., July 28, 2004, Application.  The Applications for Payment did not contain

the required lien waivers.

The July 28, 2004, Application requested a payment of $140,641.00.

July 28, 2004, Application.  The July 28, 2004, Application included a spreadsheet showing the work performed in various categories to date, and the percent complete in each category.  At the end of the spreadsheet, the July 28, 2004, Application stated that the total project was 59 percent complete.  Id.  MacGregor signed as architect.  By that time, Miller was concerned that subcontractors were not getting paid as indicated on the payment requests. Miller Deposition, at 85.

On August 18, 2004, MacGregor, as Principal of Stratum, sent Miller a letter informing her that Stratum would not complete the Project.  The letter stated in part:

> As we discussed over the past few months, Stratum Design-Build, Inc. has had issues with cash flow relative to providing labor for this project.  After discussions with you . . ., it is clear that Stratum is not in a position to continue as the General Contractor . . . .

MacGregor Deposition, Deposition Exhibit 14, August 18, 2004, Letter to Paulette Miller.

Miller then took over managing the completion of the Project directly. Once she took over management, she determined that Stratum had not paid

the subcontractors as represented in the Applications for Payment.  <u>Miller</u>

<u>Deposition</u>, at 99-103, 132-34.  Stratum also had not secured lien waivers

from all of the subcontractors.  As a result, Miller stated in her Affidavit that

the Home has incurred, or will incur, $365,118.99 in additional expenses,

over and above the $1,805,479.00 adjusted contract price.  <u>Plaintiff's</u>

<u>Motion for Summary Judgment on Count I Against Defendant Stratum</u>

<u>Design-Build, Inc., (d/e 26)</u>, Exhibit B, <u>Miller Affidavit</u>.  That is in addition

to the fees paid to OSM.  The Home then brought this action to recover

these sums.

<u>ANALYSIS</u>

The Home asks for summary judgment on the breach of contract

claims against Stratum and OSM in Counts I and IX.  <u>Motion for Summary</u>

<u>Judgment on Count I Against Stratum Design-Build, Inc., (d/e 26)</u>; <u>Motion</u>

<u>for Summary Judgment on Count IX against OSM, Inc. (d/e 28)</u>.  OSM has

filed a cross-motion for summary judgment on the breach of contract claim.

<u>Motion for Summary Judgment on Count IX of Plaintiff's Complaint (d/e</u>

<u>31)</u>.  OSM and MacGregor ask for summary judgment on the fraud claims

in Counts IV-VII.  <u>Motion for Summary Judgment on Counts IV-VII of</u>

<u>Plaintiff's Complaint (d/e 27)</u>; <u>Motion for Summary Judgment on Counts</u>

9

IV-V of Plaintiff's Amended Complaint (d/e 29). OSM also seeks summary judgment on the restitution claim. Motion for Summary Judgment on Count VIII of Plaintiff's Complaint (d/e 30). In addition all Defendants seek to strike the Miller Affidavit submitted in support of the Home's Motion for Summary Judgment against Stratum in Count I. Motion to Strike Affidavit of Paulette Buch-Miller (d/e 39); Motion to Strike Affidavit of Paulette Buch-Miller (d/e 41).

The Court will address the Motions by Count. With respect to each summary judgment Motion, the movant must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to the non-movant. Any doubt as to the existence of a genuine issue for trial must be resolved against the movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the movant has met its burden, the non-movant must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## COUNT I
## <u>BREACH OF CONTRACT AGAINST STRATUM</u>

The only issue with respect to this Count is whether the Home has presented evidence to establish its claim for damages.  Stratum admits that the undisputed facts show that Stratum breached the construction contract by pulling off the job in August 2004.[1]  The Home completed the Project on its own after the breach.  The Home submitted the Miller Affidavit to prove its damage claims.  The Defendants move to strike the Miller Affidavit in order to defeat the summary judgment request.

To prove damages, the Home must present evidence which tends to show a basis for the computation of damages with a fair degree of probability.  <u>Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.</u>, 106 F.3d 1388, 1398 (7th Cir. 1997).  In this case, the measure of damages is the difference between the contract price and the fair market cost of completing the project.   <u>Wells v. Minor</u>, 578 N.E.2d 1337, 1343-44

---

[1]OSM and MacGregor attempt to dispute the issue of liability.  <u>OSM, Inc. and Stewart W. MacGregor's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment on Count I (d/e 57)</u>, at 7.  Stratum, however, is the only Defendant to Count I, and so, it had the burden to present evidence to show the existence of any issues of fact.  <u>Celotex Corp.</u>, 477 U.S. at 322.  Stratum admitted all of the Home's undisputed material facts regarding liability.  <u>Stratum Design-Build, Inc.'s Response to the Plaintiff's Motion for Summary Judgment on Count I (d/e 42) (Stratum Response)</u>, at 1-2.  Since Stratum admitted the undisputed facts that establish liability, this issue is resolved.

(Ill.App. 4th Dist, 1991).  The Home has submitted the Miller Affidavit for this purpose.  The Miller Affidavit is competent to support the Home's claim for summary judgment if it is based on Miller's personal knowledge. Fed. R. Civ. P. 56(e).  Miller states in the Miller Affidavit that she was Executive Director of the Home when Stratum breached the construction contract.  She states that she took primary responsibility to see that the Project was completed.  She states that the Home incurred $364,407.43 in costs over and above the sums called for in the construction contract, including additional interest of $23,168.95, and closing costs of $4,575.88, that the Home incurred because it had to borrow an additional $200,000.00, to complete the Project.  In addition, Miller states that the Home incurred $12,919.56 in additional incidental expenses to complete construction of the Home.  The Home also did not complete the blacktopping work called for in the Project because of a lack of funds. Miller attached an estimate of $70,000.00 to complete the blacktopping portion of the Project.  The expenses total $447,326.99.  Miller states that the Home did not pay Stratum $82,208.00 in retainage as called for under the Stratum Agreement.  After subtracting the retainage, Miller states that the total damages to the Home as a result of Stratum's breach was

$365,118.99.

The Defendants argue that Miller's calculations are faulty because the contract price under the Stratum Agreement was actually $1,868,934.00, not $1,805,479.00, due to change orders. The Court disagrees. The Home's statement of undisputed fact No. 15 states that the contract price, including change orders, was $1,805,479.00. <u>Plaintiff's Motion for Summary Judgment on Count I Against Defendant Stratum Design-Build, Inc. (d/e 26)</u>, ¶ 15. Stratum admitted the accuracy of this statement of undisputed fact. <u>Stratum Response</u>, at 1. The price, thus, is not an issue. Miller based her calculations on the correct contract price.

The Defendants argue that the Miller Affidavit should be stricken because it is not based on personal knowledge. The Court disagrees, except for the $70,000.00 paving estimate. The Court has reviewed Miller's affidavit and deposition testimony. It is clear that she took over the Project after Stratum breached. She reviewed all the bills and paid all of the expenses. She has sufficient personal knowledge of the Project to state the cost and expenses that the Home incurred to complete the Project. The only issue is the estimate on the paving. The $70,000.00 bid attached to the Miller Affidavit is hearsay. Miller's statements regarding the cost

13

estimate, thus, are not competent to support that aspect of the summary judgment request. Thus, the Court will strike that portion of the Miller Affidavit.

Defendants also argue that the additional interest of $23,168.95, and closing costs of $4,575.88, are not recoverable because the Stratum Agreement waived consequential damages. The Home concedes that consequential damages are waived. Stratum Agreement, § 10.2. The additional interest and closing costs do not seem to be part of the fair market cost of completing the Project. Rather, the Home apparently incurred these costs as a consequence of the breach. See Cencula v. Keller, 536 N.E.2d 93, 97 (Ill.App. 2$^d$ Dist., 1989). If so, the Home may have waived any claim to these damages as against Stratum.

Stratum did not seek summary judgment on Count I; thus, the Court is only deciding whether the Home is entitled to partial summary judgment on Count I. The Home is not entitled to summary judgment for the additional interest and closing costs under Count I.

The Home, therefore, is entitled to partial summary judgment against Stratum for liability and partial damages in the sum of $267,374.16. The Home has also established that Stratum is liable for the costs of paving.

Those costs and any other damages remain for trial.

COUNTS IV-VII
<u>DECEPTIVE PRACTICES and FRAUD CLAIMS</u>

Defendants OSM and MacGregor are entitled to summary judgment on the claims outlined in Counts IV-VII. The Home failed to present evidence of the misrepresentation and omissions alleged in these Counts. Counts IV and V allege claims against OSM and MacGregor under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act).  815 ILCS 505/1 et seq.

Counts VI and VII allege common law fraud claims against OSM and MacGregor. To establish common law fraud, the Home must present evidence of: (1) a false statement of material fact; (2) knowledge or belief by OSM and MacGregor that the statement was false, or OSM and MacGregor's awareness that they were ignorant of the truth; (3) OSM and MacGregor's intent to induce the Home to act; (4) the Home's reliance on the misrepresentation; and (5) injury.  <u>Wright v. Richards</u>, 494 N.E.2d 1269, 1274 (Ill.App. 5th Dist. 1986).

To establish a deceptive practices' claim under the Consumer Fraud Act, the Home must present evidence: (1) of a deceptive act or practice; (2)

15

that OSM and MacGregor intended the Home to rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) that the Home suffered actual damage; and (5) that the damage was proximately caused by the deception.  <u>Geschke v. Air Force Ass'n</u>, 425 F.3d 337, 345 (7th Cir. 2005).  The Home was also required to plead with particularity the allegations of facts constituting fraud.  <u>Fed. R. Civ. P.</u> 9(b).  The Rule 9 pleading requirements apply to deceptive practices claims, as well as the common law claims.  <u>Davis v. G.N. Mortg. Corp.</u>, 396 F.3d 869, 883 (7th Cir. 2005).

In each of these Counts, the Home alleged that MacGregor, on behalf of OSM, misrepresented on July 28, 2004, "that the work on the Expansion Project had been completed and materials were in place as indicated by the request for payment of Stratum."  <u>Complaint</u>, ¶¶ 106; 127-133; 152; 174-178.  The July 28, 2004, Application for Payment represented that the Project was 59 percent complete.  Thus, the Home was required to present evidence that the work listed on the July 28, 2004, Application, in fact, had not been completed.

The Home has presented no evidence that work identified in the July 28, 2004, Application had not been completed by that date.  The only

evidence presented was that Stratum had not paid the subcontractors in full. Miller stated in her deposition that the Home paid Stratum all sums to which Stratum was entitled through the July 28, 2004, Application, but Stratum did not pay the subcontractors for the work completed to that point. <u>Miller Deposition</u>, at 132-34. As a result, the Home had to pay twice for some of the work. Miller, however, presented no evidence that the work identified in the July 28, 2004, Application had not been completed. <u>Id.</u>, at 133. Thus, the Home failed to present evidence that the representation that the Project was 59 percent complete was false or deceptive. The Home made no other allegations of misrepresentations in the common law fraud claims in Counts VI and VII.[2] OSM and MacGregor are entitled to summary judgment on these claims.

The Home alleged in Counts IV and V an additional material deceptive omission:

---

[2]The Home alleged in the preliminary portion of the Complaint that, "Stratum, through the offices of Stewart MacGregor, submitted an application for payment, representing that the job was 59% complete and that certain subcontractors and material suppliers had been paid." <u>Complaint</u>, ¶ 13. The Home has presented evidence that Stratum falsely represented that the subcontractors had been paid; however, the Home did not assert any fraud and deceptive practices' claims against Stratum. The reference to "the offices of Stewart MacGregor" is not an allegation that MacGregor personally made this representation for purposes of Rule 9. Also, the Home did not allege Stratum's misrepresentation regarding payment of subcontractors and suppliers with particularity as a basis for the fraud and deceptive practices claims in Counts IV-VII.

OSM failed to fully disclose in writing at the outset of the Expansion Project that it had a conflict of interest to the extent that it would be asked to inspect or certify the work of Stratum and failed to notify Brethren Home of the opportunity to retain an independent inspector for those portions of the Expansion Project.

Complaint, ¶¶ 108, 127-133. There is no evidence of any deception by MacGregor regarding his relationship with OSM and Stratum. Miller, as Director of the Home, understood from the beginning that MacGregor owned both OSM and Stratum. E.g., Miller Deposition, at 33, 38, 51, 131. Miller was an experienced administrator. She had been involved in construction projects before. She and the Directors of the Home decided to deal with a set of affiliated companies owned by one man to perform both the architectural and general contractors' functions. The Home, thus, was not deceived by any failure to disclose this fact in writing.[3]

The Home's allegations also mention the failure to disclose the possibility of hiring an outside inspector. The Home cites no evidence to

---

[3]The Home cites an Illinois Administrative Code provision that requires an architect to disclose conflicts in writing, and to withdraw from the job if the owner objects to the existence of a disclosed conflict. Plaintiff's Response to Defendants' Motion for Summary Judgment on Counts IV and V of Plaintiff's Amended Complaint (d/e 33), at 8-9, citing 35 Ill. Admin. Code § 1150.90(b)(2). MacGregor may have violated the regulation by not disclosing the conflict in writing, but the failure to make a written disclosure was neither fraudulent nor deceptive. The Home clearly understood that MacGregor owned both companies.

show that this omission was deceptive.  There is no evidence regarding the importance of outside inspections, or whether a failure to disclose such an option would be deceptive.  There is also no evidence that OSM or MacGregor intended that the Home rely on any omission of the option of hiring an outside inspector.  Given the lack of evidence on the <u>prima</u> <u>facie</u> elements of deception and intent, Defendants OSM and MacGregor are entitled to summary judgment on Counts IV and V.

COUNT VIII<br><u>RESTITUTION AGAINST OSM</u>

Illinois requires professional design firms, such as OSM, to register with the Illinois Department of Professional Regulation.  225 ILCS 305/21.  OSM failed to do so.  The Home alleges that it is entitled to restitution of the fees paid to OSM because OSM was not registered and did not complete its work.  <u>Complaint</u>, ¶ 206.  OSM asks for summary judgment on Count VIII, arguing that the Home is not entitled to restitution.  The Court agrees with OSM.

Restitution is an equitable remedy available to recover money in circumstances when equity and good conscience would not allow a defendant to retain the funds.  <u>Ryan v. City of Chicago</u>, 499 N.E.2d 517,

521 (Ill.App. 1st Dist., 1986).  The Home argues that it is entitled to restitution because the OSM Agreement was void and unenforceable because OSM was not registered as a professional design firm in violation of Illinois law.  <u>Plaintiff's Response to OSM's Motion for Summary Judgment on Count VIII of Plaintiff's Complaint (d/e 35)</u>, at 5-7.  The failure of OSM to register as a design firm does not render a contract void because the services were performed by MacGregor, a licensed professional architect.  <u>Parkman & Weston Associates, Ltd. v. Ebenezer African Methodist Episcopal Church</u>, 2003 WL 22287358 (N.D. Ill., 2003); <u>G.M. Fedorchak and Associates, Inc. v. Chicago Title Land Trust Co.</u>, 822 N.E.2d 905, 909 (Ill.App. 3d Dist., 2005); <u>Hattis Associates, Inc. v. Metro Sports, Inc.</u>, 339 N.E.2d 270, 272-73 (Ill.App. 1st Dist., 1975); <u>see also</u>, <u>Chatham Foot Specialists, PC v. Health Care Serv. Corp.</u>, 837 N.E.2d 48, 67 (Ill. 2005).

Some Illinois Appellate Courts have held that contracts with an unlicensed architectural firm or an unlicensed architect are void as against public policy, and that an innocent customer is entitled to a return of any fees paid regardless of whether any work was performed.  <u>Kaplan v. Tabb Associates, Inc.</u>, 657 N.E.2d 1065, 1068 (Ill.App. 1st Dist., 1995); <u>Ransburg</u>

v. Haase, 586 N.E.2d 1295, 1299-1300 (Ill.App. 3[d] Dist., 1992). This Court must determine and follow the rule that the Illinois Supreme Court would hold to be correct under Illinois law. State Farm Mut. Auto. Ins. Co. v. Pate, 275 F.3d 666, 669 (7th Cir. 2001). The well reasoned opinions in Hattis, Parkman and Fedorchak persuade the Court that the Illinois Supreme Court would reject the analysis in Kaplan and Ransburg when a licensed professional performed the professional services. Here MacGregor, a licensed architect, performed the architectural services provided by OSM. The OSM Agreement, thus, is not void. The Home may seek damages for breach in Count IX, but not restitution. OSM is entitled to summary judgment on Count VIII.

COUNT IX
OSM BREACH OF CONTRACT

Both parties seek summary judgment on the Home's breach of contract claim against OSM. The Home argues that OSM breached its duties under the OSM Agreement by certifying all of the Applications for Payment when those Applications did not include the lien waivers called for in the Project Manual. OSM counters that it was only obligated under the OSM Agreement to certify that the part of the work described in a

particular Application for Payment had, in fact, been completed.  OSM argues that it was not obligated to certify that Stratum had secured lien waivers or had paid subcontactors.

The issue, therefore, is whether OSM performed its obligations under the OSM Agreement.  To resolve this matter, the Court must consider the OSM Agreement.  Contracts must be interpreted to give effect to the intention of the parties.  The Court must look to the contract language to determine the parties' intent if the contract terms are clear and unambiguous.  <u>Bourke v. Dun & Bradstreet Corp.</u>, 159 F.3d 1032, 1036 (7th Cir. 1998).  Contract language is ambiguous if the language used is reasonably susceptible to having more than one meaning.  <u>Id.</u>  If the contract language is ambiguous, then extrinsic evidence is admissible and the meaning of the contract is an issue of fact.  <u>Id.</u>, at 1037.

In this case, the OSM Agreement is ambiguous.  The OSM Agreement stated that OSM would provide "Architectural/Engineering services as described in the above scope of work on a stipulated fee basis."  <u>OSM Agreement</u>, at 4.  The OSM Agreement further provided that "These fees will cover all aspects of the above scope through construction closeout and provide you with a complete, professional package within the time frame

you require and at the quality you expect." Id.  None of this language states whether OSM was or was not required to certify that Stratum secured lien waivers from subcontractors and that the subcontractors were paid.  The Scope portion of the OSM Agreement, quoted above, is also silent on OSM's services with respect to Applications for Payment.  The Court, therefore, must look to extrinsic evidence to determine the parties' intent.

The extrinsic evidence is conflicting.  Miller believed that OSM was obligated to certify that everything in an Application for Payment was proper and that Stratum had paid all of the subcontractors as indicated. Miller Deposition, at 137.  The Project Manual also states that Stratum was required to include completed lien waivers as part of a copy of each Application for Payment submitted to OSM.  Thus, an Application for Payment would be incomplete without the attached waivers.  This evidence supports the inference that the Home believed that OSM's promise to provide "a complete, professional package . . . at the quality you expect," meant that MacGregor was required to certify on behalf of OSM that each Application for Payment was complete, including lien waivers, and that the subcontractors had been paid.  OSM Agreement, at 3.

MacGregor, on the other hand, believed that OSM only agreed to

23

certify that an Application for Payment accurately described the work that had been completed on the Project.  <u>MacGregor Deposition</u>, at 18.  The certification paragraph in the first Application for Payment, quoted above, certified that the work had progressed to the level indicated in the Application for Payment and that the quality was acceptable.  This evidence supports the inference that the parties did not intend OSM to certify either the completeness of Stratum's Applications for Payment or the fact that subcontractors had been paid.  Since the contract terms such as "a complete, professional package . . . at the quality you expect," are ambiguous, and the extrinsic evidence is conflicting, issues of fact exist and preclude summary judgment.  <u>OSM Agreement</u>, at 3.

OSM argues that the Home must present expert testimony to prevail on its claim in Count IX.  The Court disagrees.  Expert testimony is necessary to establish the standard of care for professional negligence.  <u>See</u> <u>Advincula v. United Blood Services</u>, 678 NE.2d 1009, 1021 (Ill., 1996); <u>Taake v. WHGK, Inc.</u>, 592 N.E.2d 1159, 1171 (Ill.App. 5th Dist., 1992). The Home, however, does not allege negligence, but breach of contract.  The issue, thus, is not whether OSM breached the standard of care for architects, but whether it breached the OSM Agreement.  OSM's obligations are not

based on the standard of professional care, but on the parties' understanding of the meaning of its promise to provide the Home, "with a complete, professional package within the time frame you require and at the quality you expect." OSM Agreement, at 3. The parties are not obligated to present expert testimony to prove the parties' intent with respect to the meaning of these contract terms.

The Home argues that the Project Manual is part of the OSM Agreement. The Project Manual may be evidence of the meaning of the terms of the OSM Agreement, but the Home presents no evidence to support the contention that the Project Manual is part of the contract. The OSM Agreement was executed on May 22, 2003. The Project Manual is dated October 21, 2003. The OSM Agreement does not state that a Project Manual will be incorporated into the contract at a later date. The Home presents no evidence that the OSM Agreement was modified or amended.

Even if the Project Manual is considered to be part of the OSM Agreement, the Project Manual does not resolve the contractual ambiguity. The issue is whether OSM was obligated to certify that: (1) each Application for Payment was complete and that the subcontractors were paid as indicated therein; or (2) the physical work on the site had progressed

to the level represented in each Application for Payment.  The provision in the Project Manual on which the Home relies states that Stratum was required to attach lien waivers to each Application for Payment.  The provision does not state whether OSM was required to certify that the lien waivers were all attached or that the subcontractors were paid.  Thus, issues of fact remain, and summary judgment is denied.

THEREFORE, Plaintiff's Motion for Summary Judgment on Count I Against Defendant Stratum Design-Build, Inc. (d/e 26) is ALLOWED in part; OSM, Inc. and Stewart W. MacGregor's Motion for Summary Judgment on Counts IV Through VII of Plaintiff's Complaint (d/e 27) is ALLOWED; Plaintiff's Motion for Partial Summary Judgment on Count IX against Defendant OSM, Inc. (d/e 28) is DENIED; OSM, Inc. and Stewart W. MacGregor's Motion for Summary Judgment on Counts IV and V of Plaintiff's Amended Complaint (d/e 29) is DENIED as moot; OSM, Inc.'s Motion for Summary Judgment on Count VIII of Plaintiff's Complaint (d/e 30) is ALLOWED; OSM, Inc's Motion for Summary Judgment on Count IX of Plaintiff's Complaint (d/e 31) is DENIED; OSM, Inc.'s and Stewart W. MacGregor's Request for Oral Argument and Hearing (d/e 32) is DENIED; OSM, Inc. and Stewart W. MacGregor's Motion to Strike the

Affidavit of Paulette Buch-Miller (d/e 39) is ALLOWED in part; and the Motion to Strike the Affidavit of Paulette Buch-Miller (d/e 41) is ALLOWED in part.  The Court strikes that portion of the Miller Affidavit that avers that the paving work would cost $70,000.00.  Otherwise, the Miller Affidavit is admissible, and the Home has proven that Stratum is liable for breach of contract and that the Home's damages, excluding the cost of the paving, are $267,374.16.  At trial, the Home can attempt to prove the additional damages sought for the blacktop paving that Stratum did not perform, and any other damages it incurred.  The Home, further, can proceed to trial on its claim against OSM for breach of contract in Count IX.  The Defendants are entitled to partial summary judgment on the remainder of the claims.  Defendant Stewart MacGregor is dismissed as a party from this case.

IT IS THEREFORE SO ORDERED.

ENTER:   February 8, 2008

             FOR THE COURT:


                         s/  Jeanne E. Scott
                         JEANNE E. SCOTT
                         UNITED STATES DISTRICT JUDGE